We're ready to hear our next argument, United States v. Rodriguez. Good morning, may it please the court. Gail Johnson appearing on behalf of Rogelio Hernandez Rodriguez. This appeal presents a single claim, whether the government presented sufficient evidence of the required element of federal jurisdiction for both counts of conviction. The government here has conceded that it did not offer any proof that any visual depictions of child pornography themselves had traveled in interstate or foreign commerce. Instead, the government's theory of federal jurisdiction here relies solely on whether the materials used to produce those visual visual depictions themselves had been transported in interstate or foreign commerce. So what we have issue here at issue here is a and a memory card. And the outcome of this appeal comes down to a single question. When the visual depictions were copied onto the hard drive, or copied onto that memory card, both of which were manufactured overseas. Was that an act of production? And the answer to that question is a resounding no, based on this court's decisions in Wilson and the court on decision in Sturm. If I could begin with the Wilson case from 1999. It's a very similar procedure and a factual scenario there. The person Mr. Wilson was charged with possession of child pornography under the same statute. And there were diskette computer diskettes at issue that contains the visual depictions. And the court held that the government's evidence was insufficient, because it didn't prove that those diskettes were the materials that were used to produce the visual depictions at issue. So I think and did we say there that that would always be the case, or that it is possible to prove that that is enough to convict for this charge? And that the problem in Wilson was we just didn't have the evidence? Well, Your Honor, that's precisely right. The court recognized that it's possible that computer diskettes or items that we think of as storage devices could be used in production. But the evidence there was insufficient. There was no evidence that those diskettes had been used in production, and therefore the court vacated the convictions. That is the same state of affairs we have in Mr. Hernandez Rodriguez's case. There is no evidence presented that the that the hard drive or the memory card were involved in the production of the images at issue. And the government concedes that and that is why the government's position is that production doesn't mean initial production. Production, according to the government's theory on appeal, means copying. But if and I think that's why understanding Wilson is so important, because necessarily in Wilson, the diskettes contained the images, either they were used to initially produce the images, or those images have been copied onto the diskettes. If the government's theory advanced today, were correct, then in Wilson, the copying would have been deemed production and the evidence would have been deemed sufficient. It was not. The evidence was held insufficient, because production, production is not mere copying, as this court and I thought in Wilson, we were trying to define what a visual depiction was. And in that case, we were pulled into the weeds to talk about ones and zeros and pixels. And it was really hard to determine from that record, what we were talking about as far as visual depiction. Well, Your Honor, I think the court did get into the ones and the zeros in the context of describing how things could be produced. But again, if mere copying onto the diskettes were sufficient, were counted as production, and that would have been sufficient in Wilson, I don't think that there's any way around that conclusion. I mean, it's logical that if those images are contained on those diskettes, they were either produced on the diskettes, or they were copied onto the diskettes. And, and this court held that because the government hadn't presented evidence of which of those two scenarios, the evidence was that is that one of those one of those scenarios, initial production would have been sufficient. And the other scenario, mere copying would not have been sufficient. So I guess I guess it would be your position that the statutory language would need to read something along the lines of it, it would it would be unlawful to copy visual depictions onto materials shipped or transported in interstate commerce. That's, you would be looking for that word copied as opposed to produced. That could be one way the government could establish jurisdiction. Another way the government could establish jurisdiction as it does in so many of these cases is to prove that the visual descriptions themselves had moved in interstate or foreign commerce. But that's not the record here as the government has conceded. And we know that. I think we know that in this case, that the pictures and videos were all made in Oklahoma. And there was no interstate activity as regards where the victim was and the movement of the images in interstate commerce. So in order to prove interstate commerce, in this case, it simple way would be the camera, the video equipment that was used to produce, that would get you there pretty quickly. With respect to the court's last point, yes, if there had been evidence that a camera used to film and create the visual depictions that that camera had been manufactured overseas or in another state, that would be sufficient. There is no such evidence here. I do want to clarify in response to the I think the way I would describe the evidence is there's evidence that some of the images were created within the state of Oklahoma. There's simply no evidence as to the others. Just to thank you. And then, of course, as I said, that also brings us to this court's decision in Sturm on Bonk in 2012, where this court very clearly stated and held that a visual depiction is created once when it's initially when that Child Abuse Act is initially captured on some kind of media and it is not created anew each time that substantive content is transferred or copied onto a different storage device. And the issue there, I mean, we have to look at these cases. First of all, of course, the crime is charged and then the issue that's raised before the court that the court's addressing. In Sturm, we were trying to determine the visual depiction. And the division among the court at large was whether or not there was enough for the visual image to pass interstate or whether the visual image had to be on something, say a disc, that had to move interstate. And we concluded that it was enough to know that the image moved interstate. Yes, the substantive content, Your Honor, that's correct. And the word, the implications of the government's position here would be that if each time an image is copied constitutes a new act of production, then the government in that type of case would have to show that that act of copying involved a child, which, of course, the government didn't do here and couldn't do in most cases, I think. Well, don't we have that evidence here with that chart that says when created and then when placed on the either hard drive or the memory card? So, Your Honor may have misunderstood my point. I think what I'm saying is the implications of the government's position in Mr. Hernandez Rodriguez's case, I think, could have untoward effects for the government in other cases, such as a term requires that the act of production involve the sexual exploitation of a child. If the act of production is transformed into an act of copying, the government often can't and again, didn't hear, prove that the act of copying involved a live sex act with a child. Has the definition of visual depiction changed since either Wilson or Sturm? I don't think so, Your Honor. These statutes have been amended several times. What I would say is that the definitional statute has been amended, I believe, several times since Wilson. And the definition there references the word producing. This court in Wilson analyzed that in parallel with the word production, which is the word at issue here. And I think common sense recognized that it's the same. That definitional provision applies to the entire chapter, chapter 110 of these types of offenses. So I don't think that there's any grounds and the government has never argued that somehow the way this court in Sturm interpreted producing should be different from the way this court in this case should interpret production. Does it matter that in the 2008 change in the definition of visual depiction, that it was added any data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format, which would get you to copying? So, Your Honor, I think if the government's theory here were that the visual depiction had been transmitted in interstate or foreign commerce, that definitional change matters. But the government hung its jurisdictional hat here on the very specific jurisdictional prong of the materials used to produce the images. And because of that, they are stuck making your first part again, if they had done what? If the government were arguing in this case that the visual depictions themselves had been transmitted in interstate or foreign commerce, then that definitional expansion perhaps would help them. But here, the government's sole jurisdictional hook is that the materials used for producing the images themselves, those materials transmitted. And again, as the court mentioned earlier, and as some of the cases reflect, if there were proof that a camera used to produce those images had been manufactured overseas, that would be sufficient. But we don't have that evidence here. The evidence is simply insufficient. Again, under Wilson and Sturm. If I could reserve my remaining time. Counsel, we haven't heard anything about the Skeen case. How does your argument square with Skeen? Your Honor, I think I have two responses on Skeen. First of all, a close reading makes it clear that the court was the holding dependent on the plain error review posture of that case, which is not applicable here. Here, it's conceded that we have de novo review of a preserved issue. But in Skeen, the court very much used the existence of out-of-circuit law to say, based on that, our holding is that Mr. Skeen can't meet the third and fourth prongs of plain error review for reversal. So that would be my first point on Skeen. My second point, of course, is that I think it's distinguishable on that ground alone. But to the extent this court disagrees, certainly Sturm as an en banc decision that ruled anything that's inconsistent. If I could reserve my remaining time. Yes, you may. Thank you. We're ready to hear from the government. Good morning. May it please the court. My name is Reagan Reniger. I'm an assistant United States attorney in the Northern District of Oklahoma. Mr. Rodriguez committed the crime of sexual exploitation of a child as charged in count one when he sexually abused his minor stepson, KR, from July 2015 to February of 2018. During each of these sexual acts, Mr. Rodriguez used KR with the purpose of producing a visual depiction. These 524 visual depictions were later produced using materials that were transported in or affecting foreign commerce. Mr. Rodriguez also committed the crime of possession of child pornography by possessing the external hard drive and a memory card that contained the visual depictions of KR's sexual abuse. Explain the evidence that you rely on for production. How do you think production worked here? With regards to child sexual exploitation. The creation of the images. Well, in with regards to 2251, the sexual exploitation of a child, the images were initially created and that was itemized in both appellant and appellee's briefs. It wasn't until the images were later copied onto the external storage media, being the external hard drive and the memory card that those images were produced with under the definition provided for in 2252 and consistent with the court's holding in Skeen, answering the question that was left unanswered in the court's holding or decision in Wilson. Does it matter that Skeen was a plein air case? I think it's notable, but I don't think the court should ignore it. I think what's what's. Which is noteworthy is that this court in Skeen did acknowledge that it was a plein air case, but it expressly acknowledged that since the Wilson decision, the Seventh and Ninth Circuits have held as a matter of law that the jurisdictional nexus is satisfied when an individual copies a visual depiction onto a storage device. It's also relevant that the court's holding in Skeen has been relied on in other circuits. I believe the first, sixth, seventh and ninth circuits in reviewing cases de novo to support their conclusions that images are produced when images are copied to storage devices. Let me ask you a question about the memory card, if I can. So the memory, did the memory card come out of the device that took the pictures? That was not evidence that was presented to the jury. And as I stand here today, I think that is an unknown. But I don't think that that is necessarily important, and I think it's it's consistent with the court's prior holdings and the prior analysis that it's reasonable that the device that actually captured the original child exploitation, that original abuse, may never be known. It is the fact that. But don't you think it would I mean, you you wouldn't have to be arguing this additional step if you could prove this memory card came out of the camera. Of course. I mean, because it would have been the cat would be what caught the original image. And I that would have been nice. But I think it's reasonable to think that four years after an alleged sexual abuse has occurred, especially as in this case, from 2014 to this case being tried in 2019, that a perpetrator's recording device of a sexual act on a minor child is no longer identifiable or is able to be located. So I don't think that it's unreasonable that there are other alternatives that the statute and the law provide for the government to prove. And it's also consistent with congressional intent. And I think the court's dicta in the Sturm case addresses the child pornography acts throughout history and expressly recognize that the separate harms that are created by the creation of the imagery by receiving and distributing child pornography. It is clear that Congress intended to criminalize the receipt, the distribution, the possession of not only copies, but digitized copies of child pornography. If we rely on the language in Sturm, which I think we have to because it's an en banc decision that says the visual depiction is created only once. What do we do with that in this case? Because you're relying on copying. Yes, and I think what. To take away from this, the reliance on this, this quotation is that words do have meaning and in Sturm, this court chose to use the word create, not produce. So while the sexual abuse that occurred or was created when Mr. Rodriguez copied the files, I'm sorry, let me rephrase that. The sexual abuse that Mr. Rodriguez committed was produced when it was copied. We are not creating new child enticement or child exploitation acts. It is the is the creation of new imagery from that visual depiction. The visual depiction of the of the abuse was produced within the meanings of twenty to fifty two and to continue reading that that quotation, this court expressly recognizes that the visual depiction can be contained not only in tangible form, but also in any other form, including a copy of the image. So while he was while Mr. Rodriguez was charged and the evidence proved it and he was convicted by the jury of producing the copies, not the originals of the visual depictions of his sexual abuse. Are you aware of any case that says that copying images onto a medium such as an image is not production? Not to my knowledge, the only the only case that that I have is Wilson, which says it's we're not foreclosed to the idea. The government just didn't prove it. What was your theory before the jury? What evidence did you provide to the jury as regards production? That when the images were copied from whatever original device captured the original abuse, when those images were copied to the external hard drive that was manufactured in Malaysia and were copied to the. The memory card that had been manufactured in China, that that is when production occurred. And did did the agent refer to the word production? Not to my knowledge, your honor. Did you refer to that word in your closing argument? Not to my knowledge. How do we hook this all together to say that there's a conviction here when the standard is to prove beyond a reasonable doubt that production occurred? Because I think the the cases Wilson, Skeen and Sturm can be read collectively and not individually, as Mr. Rodriguez suggests, that as a matter of law, this court has relied this court has relied on other circuits that have concluded as a matter of law that copying is production. In Skeen, this court concluded that copying is production. Again, that's a plain air case, and we said it's not plain air because under third and fourth prongs of plain air, we can be satisfied that this conviction is sound. That's a different animal than what we have here. And I understand the court's opinion or what the court's saying. What I think needs to be clear is that in Skeen, the court recognizes that this was a matter of law in other circuits. And I think the court should also consider the fact that other circuits, as a matter of law, reviewing cases de novo, have relied on this court's decision in Skeen for that exact proposition that copying is producing. Did the jury instructions in this case use the word produce or production? Only as regards to 2251, which is the child exploitation instruction, the third element did include for the purpose of producing, which I would submit to the court goes to the mens rea of the of the act of sexual abuse. With regards to 2252, the possession charge, the second element did include production of visual depictions. OK, so would it be despite the fact that maybe your agent didn't testify with that word and you maybe didn't use the word production or produce in closing argument, would it be your position that the jury necessarily concluded that it was produced by copying it? I think it's reasonable for a jury to make that conclusion, regardless of whether the government argued it or whether an agent made that conclusion.  the government argued it or whether the agent testified to that specific word. Any other questions? If there are no other questions, I would return my time to the court. Thank you. So in Wilson, the only thing that was left open in Wilson was the fact that in some future case, the government put it could have put on sufficient evidence to show that these materials used in actual production had themselves been transmitted in interstate or foreign commerce. The question of whether copying constitutes production was necessarily addressed in Wilson against the government's position here, because again, there's only two ways those images could have ended up on those diskettes through initial production or through having been copied there. And then finally, to loop back to the court's question earlier about the, I'm sorry, my friend across the aisle's argument about the word creating, whether creating means producing. I think it's clear in the stern on Bonk opinion that they're using creating as a synonym for producing the statutory language at issue there was producing the court alternatively use creating and made in the same paragraph. But clearly what they're interpreting and talking about is the word producing. I thought we were talking about the definition of visual depiction. Of course, that is the central holding of the case. But absolutely, Your Honor. But in terms of the language the court has quoted, and I have quoted in my briefs about a visual depiction is created only once and is not created anew each time a copy happens. I'm simply saying I think it's the only reasonable inference of the word creating there is that it means producing. So for all these reasons, we would ask the court to vacate the convictions and remand for entry of an order of acquittal on both counts. Thank you. Thank you. Thank you both for your arguments this morning. The case is submitted.